IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HIGH DESERT RELIEF, INC.,
a New Mexico Nonprofit Corporation,

      Petitioner,

v.                                                           No. 16-CV-469 MCA/SCY and
                                                             No. 16-CV-816 MCA/SCY

UNITED STATES OF AMERICA,
through its agency the INTERNAL
REVENUE SERVICE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following *Motions* in this consolidated case: the United States' *Motion to Dismiss Petition to Quash* [Doc. 7],[1] and the *United States' Motion to Dismiss Petition to Quash and Motion to Enforce Summons* [Doc. 18].[2] The Court has considered the submissions, the relevant law, and has otherwise been fully informed in the premises.  The Court **GRANTS** both of the United States' *Motions*.

**BACKGROUND**

---

[1] This *Motion* is directed at the *Petition to Quash Summonses* in Case No. 16-CV-469.
[2] This *Motion* is directed at the *Petition to Quash Summons* in Case No. 16-CV-816.  The cases were consolidated prior to the United States' filing of this second *Motion*.  Though the United States submits two separate *Motions to Dismiss*, HDR submitted a consolidated Response [Doc. 22] and the United States submitted a consolidated *Reply* [Doc. 23].

The Internal Revenue Service (IRS) submits that Petitioner, High Desert Relief (HDR), operates a medical marijuana business in New Mexico. [Doc. 8, p. 2][3] The IRS sought to audit HDR for the fiscal years ending June 30, 2014 and June 30, 2015 [Doc. 1, ¶ 10, Doc. 19, ¶ 8; Doc. 19-1, p. 1; Doc. 19-3, p. 1], eventually issuing summonses to My Bank [Doc. 1-2, p. 2], the New Mexico Department of Health – Medical Cannabis Program (NMDOH) [Doc. 1-3, p. 5], and Public Service Company of New Mexico (PNM) [16-CV-816, Doc. 1-2, p. 1] for records for the period of July 1, 2013 to June 30, 2015.

HDR first filed a *Petition to Quash Summonses* in case 16-CV-469, and then a second *Petition to Quash Summons* in case 16-CV-816, both pursuant to 26 U.S.C. § 7609(b)(2) (allowing the subject of a summons to bring an action to quash a third-party summons). [16-CV-469, Doc. 1, ¶ 6; 16-CV-816, Doc. 1, ¶ 5] Thereafter, the Court consolidated the two cases on the motion of the parties. [Doc. 14] HDR's primary argument in each *Petition* is that the IRS is abusing its civil audit power to conduct a criminal investigation into whether HDR is violating the Controlled Substances Act (CSA). [Doc. 1, p. 1; 16-CV-816, Doc. 1, p. 1] According to the *Petitions*, however, the IRS claims to be enforcing 26 U.S.C. § 280E, which disallows deductions for business expenses if the business "consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted." HDR

---

[3] All citations to document numbers refer to the lead case, number 16-CV-469, unless otherwise noted.

also takes the position that the IRS cannot make any determination that an entity is illegally trafficking in drugs for purposes of Section 280E.  [Doc. 1, p. 11]  HDR also argues that the IRS cannot satisfy the requirements of *United States v. Powell*, 379 U.S. 48 (1964) (announcing the standard governing enforcement of an IRS summons).

The United States filed a separate *Motion to Dismiss Petition to Quash* for each *Petition*, making different arguments in each *Motion*.  [Doc. 7; Doc. 18]  In its first *Motion to Dismiss* (pertaining to the *Petition to Quash* the My Bank and NMDOH summonses), the United States invoked Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks jurisdiction over the subject matter, and also invoked Federal Rule of Civil Procedure 12(b)(6), arguing that HDR failed to state a claim for relief.  [Doc. 7, p. 1]  In its second *Motion to Dismiss* (pertaining to the *Petition to Quash* the PNM summons), the United States only invoked Rule 12(b)(6), arguing that the *Petition* failed to state a claim upon which relief can be granted.  [Doc. 18, p. 1]  The United States also requested this Court to enforce the summons it issued to PNM.[4]  Along with its second *Motion to Dismiss*, the United States submitted and relied on a *Declaration of Revenue Agent Lisa Turk* and documentary evidence.  [Doc. 19]

In the *Declaration*, Ms. Turk set forth facts relevant to the *Powell* test which governs the enforcement of an IRS summons.  Ms. Turk stated that, on February 2, 2016, she notified HDR by letter that the IRS had selected for examination HDR's tax return for the period ending June 30, 2014.  [Doc. 19, ¶ 5]  On May 25, 2016, Ms. Turk mailed

---

[4] In its consolidated *Reply*, the United States also requests the Court to enforce the summons it issued to My Bank.

HDR a letter informing it that the IRS had also selected for examination HDR's tax return for the period ending June 30, 2015. [Doc. 19, ¶ 8] Ms. Turk attached Publication 1, "Your Rights as a Taxpayer," to each letter. [Doc. 19, ¶¶ 5, 8] In the meantime, on May 3, 2016, Ms. Turk issued a summons to My Bank, requesting documents pertaining to HDR by May 26, 2016. [Doc. 19-8, p. 1] On May 18, 2016, Ms. Turk issued a summons to NMDOH requesting documents pertaining to HDR by June 13, 2016. [Doc. 19-10, p. 1] Finally, on June 24, 2016, Ms. Turk issued a summons to PNM for documents pertaining to HDR by July 18, 2016. [Doc. 19-6, p. 1] Ms. Turk contends that she issued these summonses in order to: "assess the correctness of [HDR's] returns and determine if HDR has unreported taxable income" and to "substantiate the gross receipts reported in HDR's tax returns." [Doc. 19, ¶¶ 12, 13, 14] When Ms. Turk served the summonses on PNM, My Bank and NMDOH, she mailed, the same day, via certified mail, copies of the summonses to HDR, along with a notice explaining HDR's rights to bring a proceeding to quash the summonses. [Doc. 19, ¶¶ 17, 19, 21; Doc. 19-7, p. 1; Doc. 19-9, p. 1; Doc. 19-11, p. 1]

Ms. Turk further declares that, as of the date of her *Declaration*, My Bank and the NMDOH had not produced the requested documents. [Doc. 19, ¶ 22] PNM, however, sent documents to Ms. Turk in response to the summons, but Ms. Turk stated that she had not opened and would not open the package of documents given the pending litigation. [Doc. 19, ¶ 22]

Ms. Turk also declared that "[n]o Department of Justice referral, as defined by 26 U.S.C. § 7602(d), is in effect with respect to HDR [and its shareholders] for the tax periods under examination."  [Doc. 19, ¶¶ 26, 27]

After filing its *Motions to Dismiss*, the United States informed the Court that it no longer seeks to enforce its summons issued to NMDOH because it received records in response to a public records request.  [Doc. 21]

The Court entered an *Order* in which the Court gave notice to the parties that the Court intended to convert the *Motions to Dismiss* into *Motions for Summary Judgment*.  [Doc. 25]  Pursuant to Federal Rule of Civil Procedure 12(d), the Court gave the parties an opportunity "to present all additional material pertinent to the *Motions*."  [Doc. 25, p. 3]  The United States did not submit a response.  HDR submitted an additional argument and additional documents [Doc. 27], including a portion of a brief submitted by the Commissioner of Internal Revenue in the case *Feinberg v. Commissioner*, U.S. Tax Court Docket No. 10083-13 (September 26, 2014).  In this brief, the Commissioner stated that the Department of Justice declared, by memoranda issued in 2009 and 2013, that the prosecution of marijuana related crimes against persons and businesses acting in compliance with state law was not to a priority and was not to be "pursued" by the Department of Justice.[5]  [Doc. 27-18]

_____

[5] HDR also submitted:  1) a *Declaration* from a former HDR employee concerning Ms. Turks' attempts to contact her in December, 2016 [Doc. 27-1] and letters concerning the event [Docs. 27-2, 27-3]; letters between HDR and its representatives and the IRS as well as IRS documents regarding HDR [Docs. 27-3, 27-5 to 27-16]; a "Supplemental Declaration of Tom Radow" [Doc. 27-4]; and a table purportedly prepared by the Government Accounting Office which identifies problems with the "Section 1203

**ANALYSIS**

*Subject Matter Jurisdiction*

In its first *Motion to Dismiss Petition to Quash* [Doc. 7], but not in its Second *Motion to Dismiss Petition to Quash* [Doc. 18], the United States argues that this Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity with regard to the claim brought by HDR. [Doc. 7, p. 1; Doc. 8, p. 3] Though the United States recognizes that "Section 7609(b)(2) constitutes a waiver of sovereign immunity, allowing proceedings against the United States to quash IRS summonses," citing *Stringer v. United States*, 776 F.2d 274, 275 (11th Cir. 1985), the United States fails to explain why this waiver does not apply, leaving it to the Court to attempt to piece together the United States' argument.

A challenge to the waiver of sovereign immunity is generally considered a challenge to the Court's subject matter jurisdiction. *Levy v. Kansas Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) (indicating "that sovereign immunity is often equated with a lack of subject-matter jurisdiction, but the equation is more of an approximation because sovereign immunity can be waived, and courts are not required to raise the issue sua sponte" (internal quotation marks and citation omitted)). Federal Rule of Civil Procedure 12(b)(1) allows for the dismissal of a claim for lack of subject matter jurisdiction. Generally, Rule 12(b)(1) motions to dismiss for lack of jurisdiction will come in the form of either: (1) a facial attack, in which case "the movant

---

Process," including that "IRS managers could investigate employees, but they were not trained to be investigators" [Doc. 27-17].

merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true"; or (2) a factual attack, where "the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co*., 428 F.3d 1285, 1292 (10th Cir. 2005). Given that the United States relies solely on the allegations in the *Petition*, the Court concludes that the United States is launching a facial attack on subject matter jurisdiction.

The United States may have waived its sovereign immunity argument by failing to do more than cite a broad principle which actually supports the argument that the United States in fact has waived sovereign immunity. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513 (10th Cir. 1990) (stating that the court will not "manufacture a party's argument for him"). Nonetheless, for the sake of a complete analysis, the Court will consider the argument the Court believes the United States attempted to make. The Court assumes that the United States' position is that, *if* HDR's argument that the United States was conducting a criminal investigation is correct,[6] this Court lacks jurisdiction because Section 7609 expressly excludes from its waiver of sovereign immunity any third-party summons "issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7609(c)(2)(E)(i). Accordingly,

---

[6] The IRS in fact argues the opposite, that it was not conducting a criminal investigation. The IRS states: "[T]here is no ongoing criminal investigation." [Doc. 8, p. 6] Likewise, in its second *Motion to Dismiss Petition to Quash* [Doc. 18], the United States takes the position that it was not conducting a criminal investigation and that Section 280E is not a criminal statute. [Doc. 18, pp. 10, 11, 13]

the Court must decide whether the summons was issued by a criminal investigator with the IRS "in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws." *Id.* The Court looks at the allegations in the *Petition* to make this determination. *Cont'l Carbon Co.*, 428 F.3d at 1292.

The *Petition* alleged that the IRS "is abusing its authority under its civil audit power to conduct essentially a criminal investigation of purported [violations] of the Controlled Substances Act." [Doc. 1, ¶ 1] The *Petition* also stated that Revenue Agent Turk informed HDR's accountant that the IRS:

> had made the determination that HDR was trafficking in a controlled substance. This is a violation of the Controlled Substances Act. The purpose of this audit is to confirm their determination of illegal activity and take away all of HDR's otherwise lawful tax deductions.

[Doc. 1, ¶ 11] HDR alleged that the summonses were beyond the scope of a purportedly civil examination and were "directed to establishing the facts of the purported criminal activity of HDR under the CSA." [Doc. 1, ¶¶ 13, 14] Finally, HDR alleged that 26 U.S.C. § 280E requires "a finding of illegal behavior by Plaintiffs . . . outside of the IRS's summary determination." [Doc. 1, p. 9]

HDR's argument fails for two reasons. First, HDR did not allege that Ms. Turk is a criminal investigator of the IRS, nor did HDR identify "an offense connected with the administration or enforcement of the internal revenues laws" for which the summonses were issued. 26 U.S.C. § 7609(c)(2)(E)(i). [Doc. 1, pp. 9-14] Furthermore, HDR's argument that, prior to the IRS invoking Section 280E, there must be an "outside" or non-

8

IRS "finding of illegality under federal drug laws," fails. [Doc. 1, p. 9] Section 280E is not, in itself, a criminal provision – it concerns allowable deductions. Section 280E states:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

While the statute references a criminal statute, the Controlled Substances Act, it does not first require a determination by a non-IRS government official conducting a criminal investigation that the party claiming a deduction is trafficking in controlled substances.

The IRS may seek to apply Section 280E without conducting a criminal investigation. *See Alpenglow Botanicals, LLC v. United States*, 2016 WL 7856477, at *3-4 (D. Colo. 2016) (rejecting the argument that the IRS is conducting a criminal investigation of a business when applying Section 280E); *c.f. Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987) (stating that "until referral [to the Department of Justice] occurs, the pendency of a criminal investigation against the taxpayer does not inhibit the authority of the IRS to conduct investigations pursuant to § 7609" and that, under *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 314 (1978), "[a]lthough pre-referral use of the administrative summons is restricted to the good faith limitations of *Powell*, good faith is not abandoned when a summons is used to gather evidence for a criminal investigation").

As explained by the Court in *Alpenglow Botanicals*:

Trafficking as used in § 280E means to buy or sell regularly. *Californians Helping to Alleviate Med. Problems v. C.I.R.*, 128 T.C. 173, 182 (T.C. 2007). As such, the real issue here is whether the IRS has authority to determine if, in the course of plaintiffs' business, they regularly bought or sold marijuana. The Court cannot understand why not. Such a determination does not require any great skill or knowledge, certainly not skill or knowledge of a criminal investigatory bent. . . .

Section 280E is placed in the Internal Revenue Code, and instructs that deductions should be disallowed if certain circumstances exist in a taxpayer's business. It would certainly be strange if the Internal Revenue Service was not charged with enforcing that provision. The fact that selling marijuana may also constitute a violation of the CSA is simply a byproduct of § 280E using the CSA's definition of "controlled substances." Section 280E does not require that a criminal investigation be pursued against a taxpayer, or even that § 280E only applies if a criminal conviction under the CSA has been obtained. If Congress had wanted such an investigation to be carried out or conviction to be obtained, then it could easily have placed such language in § 280E. It did not, however.

Plaintiffs assert repeatedly that § 280E requires the IRS to find that a crime has been committed and/or that a taxpayer has engaged in illegal activity. . . . Even if these assertions are accurate, this does not transform the IRS' determination that § 280E applies into a criminal investigation, a criminal prosecution, or somehow the rendering of a criminal verdict. There is absolutely no plausible allegation in the Amended Complaint that plaintiffs have been investigated, charged, or prosecuted criminally for their alleged business activities in 2010, 2011, or 2012. By *criminal*, the Court means a criminal case or prosecution being prepared or filed against plaintiffs.

*Alpenglow Botanicals*, 2016 WL 7856477, at *3-4 (emphasis in original). This Court

agrees. Section 280E is a civil statute, and an investigation into a suspected violation of

Section 280E and requires no "outside," "criminal," or "pseudo-criminal" [Doc. 1, pp. 8,

9] determination or investigation of violation of the CSA. An IRS Agent conducting a

civil investigation into tax liabilities may investigate whether a party is violating the CSA for the purposes of applying Section 280E without conducting a criminal investigation.[7]

Finally, though HDR *characterizes* the investigation here as criminal or pseudo-criminal in the *Petition*, HDR alleges no *facts* by which this Court could conclude that the IRS was investigating a purported violation of the CSA for purposes of a criminal investigation. Thus, HDR has failed to state a claim which would establish that the investigation here was criminal, or precluded by Section 7609(c)(2)(E)(i). *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). The third-party summonses issued here were not "issued by a criminal investigator" or "in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7609(c)(2)(E)(i). Therefore, under Section 7609(b)(2), the United States waived sovereign immunity for this proceeding to quash, and, accordingly, this Court has jurisdiction over the proceeding pursuant to Section 7609(h)(1).

---

[7] In addition, though the issue of the IRS's authority to make such a determination was not raised, several cases have determined that selling medical marijuana constitutes trafficking as defined by Section 280E. *Beck v. Comm'r*, 110 T.C.M. (CCH) 141 (2015) (holding that medical marijuana dispensaries are trafficking controlled substances within the meaning of Section 280E); *Californians Helping to Alleviate Med. Problems, Inc. v. Comm'r*, 128 T.C. 173, 182 (2007) (rejecting, in a civil proceeding to determine tax liability, the argument that selling medical marijuana, as permitted by California law, is not "'trafficking' within the meaning of section 280E"); *Canna Care, Inc. v. Comm'r,* 110 T.C.M. (CCH) 408, 2015 WL 6389130, at *13 (2015) (applying Section 280E in a civil tax proceeding and determining that the petitioner, which sold medical marijuana in California, which allowed such sales, was nonetheless "involved in the trade or business of trafficking in a controlled substance within the meaning of the CSA" and therefore, pursuant to Section 280E, could not claim business expense deductions).

### *Standard Governing Petition to Quash*

Though the United States requested this Court to dismiss both *Petitions* pursuant to Federal Rule of Civil Procedure 12(b)(6), in order to consider the documents attached to the *Petitions* and the affidavit submitted by Ms. Turk, the Court converted both 12(b)(6) *Motions to Dismiss* into *Motions for Summary Judgment*.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  [Doc. 25]   The Court allowed the parties the opportunity to present further materials.  Only HDR did so.  [Doc. 27]

 "[S]ummons enforcement proceedings [and their counterpart, proceedings to quash a summons] should be summary in nature and discovery should be limited." *United States v. Stuart*, 489 U.S. 353, 369 (1989) (internal quotation marks and citations omitted); 26 U.S.C. § 7609(b)(2)(A) (allowing the Secretary to seek to compel compliance with a summons in a proceeding to quash).  As such, even though the United States seeks summary judgment, "the traditional summary judgment standards such as viewing the facts in [the non-movant's] favor, do not apply."  *Villareal v. United States*, 524 Fed Appx. 419, 423 (10th Cir. 2013) (unpublished decision).  Instead, the United States must make a *prima facie* showing that it was acting in "good faith in issuing the summons."  *United States v. Clarke*, 134 S.Ct. 2361, 2365 (2014).  If the Government is able to do so, the party resisting enforcement of a summons "must do more than just produce evidence that would call into question the Government's *prima facie* case. The burden of proof in these contested areas rests squarely on the taxpayer." *United States v.*

*Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1444 (10th Cir. 1985) (internal quotation marks and citation omitted).  The petitioner is only entitled to a hearing to examine an IRS agent if he or she "point[s] to specific facts or circumstances plausibly raising an inference of bad faith." *Clarke,* 134 S.Ct. at 2367; *see also Balanced Fin. Mgmt*, 769 F.2d at 1444 ("[I]f at this stage the taxpayer cannot refute the government's *prima facie Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." (Internal quotation marks and citation omitted)).

In order to show that it acted in good faith, the United States must make a *prima facie* showing that it complied with the factors set out in *Powell*, 379 U.S. at 57-58.  The United States must demonstrate that:

> [1] the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*Powell*, 379 U.S. at 57-58.  The United States must also show that no referral to the Justice Department has been made.  26 U.S.C. § 7602(d).  If the *Powell* test is satisfied, the Court may enforce the petition, and if it is not satisfied, the Court may quash the petition.  *Powell*, 379 U.S. at 57-58 (considering a petition to enforce an IRS summons); *Jewell v. U.S.*, 749 F.3d 1295, 1297-98 (10th Cir. 2014) (applying *Powell* to petitions to quash IRS summonses).

### *Application of Powell*

To meet its *prima facie* showing, the United States submitted the Declaration of Revenue Agent Lisa Turk. Ms. Turk declared that the purpose of the investigation was to examine "the federal tax liabilities . . . of High Desert Relief, Inc. . . . for the tax periods ending June 30, 2014, and June 30, 2015." [Doc. 19, ¶ 4] This is enough to meet the first factor. Ms. Turk also explained the summoned documents' relevance to the inquiry. She stated that the records from NMDOH would be used to determine whether HDR is growing or selling marijuana and where its growing facilities were. [Doc. 19, ¶ 14] The records from PNM would be used to determine, from how much electricity HDR used, how much marijuana HDR grew during the inquiry period to substantiate gross receipts. [Doc. 19, ¶ 13] And the documents from My Bank would be used to substantiate gross receipts income for the inquiry period. [Doc. 19, ¶ 14] This information satisfies the second *Powell* factor. Ms. Turk declared that the information she sought was not already in her possession and that "[t]o date, HDR has not provided any documents in response to the [information document request]" she submitted to HDR. [Doc. 19, ¶¶ 7, 8] She did state, however, that after issuing the summons to PNM, she received a package from PNM in response to the summons but "I have not and will not open the package until this litigation is resolved." [Doc. 19, ¶ 22] My Bank did not produce any records, but Ms. Turk obtained information from NMDOH through a public records request, and therefore the United States "no longer seeks to enforce the summons against [NMDOH] as it is moot." [Doc. 21, p. 1] Through these statements, the United States meets the third *Powell* factor. Ms. Turk stated that she mailed HDR notice of the inquiry on February 2, 2016 (as to the tax period ending June 30, 2014) and May 25, 2016 (for the tax periods

ending June 30, 2014 and June 30, 2015), and she included IRS Publication 1, "Your Rights as a Taxpayer" with both mailings.  [Doc. 19, ¶¶ 5, 8]  Ms. Turk mailed, via certified mail, notice of each summons to HDR on the same day that she served each summons.  [Doc. 19, ¶¶ 17, 19, 21]  Through these statements, the United States satisfies *Powell's* fourth factor.  Finally, Ms. Turk declared that there was "[n]o Department of Justice referral, as defined by 26 U.S.C. § 7602(d)" with respect to HDR or either of its two shareholders for the tax periods being examined.  [Doc. 19, ¶¶ 26, 27]  In all, by providing Ms. Turk's *Declaration*, the United States demonstrated a *prima facie* case that it acted in good faith as required by *Powell*.

HDR responds in an attempt to rebut the United States' showing of good faith. Most of HDR's arguments that the United States did not act in good faith are premised on its position that the IRS may not investigate or determine whether HDR violated the CSA.  [Doc. 22, pp. 7-14]  Because the Court disagreed with this position, above, the Court need not revisit this issue here.  Given that the IRS has the authority to investigate whether a party is trafficking in controlled substances in order to apply Section 280E, the summons were issued for a legitimate purpose.

HDR made arguments implicating two other *Powell* factor arguments.  First, HDR argued that it offered to provide the IRS with the documents the IRS sought, therefore, the IRS cannot meet the second *Powell* requirement that the information it sought was not in its possession.  [Doc. 22, p. 22]  Prior to the issuance of the summonses, HDR offered to "furnish documentation to support income, costs of goods sold, and, ordinary and necessary business expenses, provided that we are given assurance from the IRS, that the

IRS will use the information furnished for this civil audit, and not to support the IRS's determination that the Taxpayer's business consists of illegal activities." [Doc. 1-10, p. 2] An IRS attorney responded that the IRS did not have the authority to agree to the conditions, citing 26 U.S.C. § 6103(i) ("Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration"), which requires the IRS to turn tax return documents over to other agencies in some circumstances. The record does not reflect that HDR ever provided the documents to the IRS, either before or after the summonses were issued. The Court concludes that the IRS has demonstrated that "the information sought is not already within the Commissioner's possession." *Powell*, 379 U.S. at 57-58. HDR's response is insufficient to rebut the United States' showing, given that HDR only offered to produce documents (and not necessarily the specific documents summoned) upon conditions with which the IRS could not lawfully agree.

Second, HDR submitted that it was entitled to notice in advance that the IRS would be contacting third parties, citing 26 U.S.C. § 7602(c). [Doc. 22, pp. 22-23] Section 7602(c)(1) states that during an IRS inquiry:

> An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

The record reveals that HDR received such notice. In her Declaration, Ms. Turk stated: "On February 2, 2016, I mailed a letter to HDR informing it that its tax return for the period ending June 30, 2014, had been selected for examination." [Doc. 19, ¶ 5] Ms.

Turk also mailed a letter to HDR on May 25, 2016 informing it that its "tax returns for the periods ending June 30, 2014, and June 30, 2015 had been selected for examination." [Doc. 19, ¶ 8]  She stated that enclosed with both of these letters was "Publication 1 ('Your Rights as a Taxpayer')."  While the United States failed to submit Publication 1 with its documentary evidence, the Court may take judicial notice of "official government publications."  *Clemmons v. Bohannon*, 956 F.2d 1523, 1532 n.2 (10th Cir. 1992) (en banc) (Seymour, J. dissenting); *Clappier v. Flynn*, 605 F.2d 519, 535 (10th Cir. 1979); *see also* Federal Rule of Evidence 201(b)(2) (stating that the court may take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  IRS Publication 1 is available at the IRS's website.  Internal Revenue Service, *Forms and Publications*, Publ 1, (Dec. 5, 2014), https://apps.irs.gov/app/picklist/list/formsPublications.html.  Publication 1 states:

> **Potential Third Party Contacts** Generally, the IRS will deal directly with you or your duly authorized representative.  However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. . . .  Our need to contact other persons may continue as long as there is activity in your case.

*Id.*  Given that the IRS provided this notice in February and again in May, the IRS complied with the requirement of Section 7602(c)(1), and *Powell's* fourth factor, to provide reasonable notice in advance that it may contact persons other than HDR.  *Gangi v. United States*, 2 F.Supp.3d 12, 21-22 (D. Mass. 2014) (holding that Publication 1 provided sufficient notice of contact of third parties to comply with Section 7602(c)), *aff'd*, 638 Fed. Appx. 16 (1st Cir. 2016).

Accordingly, the United States demonstrated a *prima facie* case that it acted in good faith pursuant to *Powell*. HDR has not rebutted this showing. Finally, HDR requests an evidentiary hearing "to determine whether Respondent satisfied the *Powell* standards, and, in particular, whether a legitimate purpose supports the enforcement of the summonses and whether the summonses are relevant to any legitimate purpose." [Doc. 22, pp. 3, 23-24] However, for the reasons set forth above, HDR has not "point[ed] to specific facts or circumstances plausibly raising an inference of bad faith," and, thus, the HDR is not entitled to a hearing. *Clarke,* 134 S.Ct. at 2367.

### HDR's "Dead Letter" Argument

HDR made a new argument in its *Supplement to Respondent's Motion for Summary Judgment*, submitted after the Court alerted the parties that the Court was going to convert the *Motions to Dismiss* into *Motions for Summary Judgment*. Though the Court only specifically allowed the parties to "present all additional material pertinent to the *Motions*," and did not invite the parties to present additional arguments, the Court will briefly address HDR's argument.[8] *See* Fed. R. Civ. P. 12(d) (allowing the parties the "opportunity to present all the material that is pertinent to the motions").

Relying on cases such as *Sterling Distributors, Inc. v. Patterson*, 236 F.Supp. 479, 482-84 (N.D. Ala. 1964), HDR argues that "federal criminal drug laws with respect to state-legal marijuana sales [are] dead letter." [Doc. 27, pp. 4-6] In *Sterling Distributors*,

---

[8] Generally, the Court would treat such additional arguments as a surreply and, accordingly, would allow the opposing party an opportunity to respond. However, under the circumstances of this case, the Court concludes that no additional briefing is necessary.

a beverage distribution company followed local practice of gifting beer or providing rebates to retail outlets to induce the purchase of their products. *Id.* at 481-82. This practice was also followed by the company's competitors, and "[f]or plaintiff to have refrained from doing likewise would have resulted in a substantial loss of business." *Id.* at 482. The practice was not allowed under state law. Even so, the enforcement authority within the state determined not to enforce the laws "and to ignore them and has so directed its administrator and investigators." *Id.* at 483-84. Accordingly, the district court held:

> Thus the law upon which the Internal Revenue Service relies has become a dead letter, not expressive of current community sentiment at all.
>
> It would be an apparent anachronism for this court now to hold that the expenses actually incurred by plaintiff in carrying on the trade or business violate or frustrate the public policy of the State of Alabama expressed in legislation and regulations which the State, through its authorized officers, long ago determined should not be enforced.

*Id.* at 484. HDR asks us to apply this analysis and hold that the CSA is a "dead letter" law with respect to "state-legal marijuana sales," given that New Mexico law allows the manufacture and distribution of marijuana for medical purposes, and given that the Department of Justice has expressly refused to prosecute the CSA against such manufacturers and distributors acting in compliance with state law. [Doc. 27, pp. 6-7]

The Court finds HDR's argument unpersuasive. As HDR argues, our United States Supreme Court stated:

> It is clear that the Congress intended the income tax laws 'to tax earnings and profits less expenses and losses,' *Higgins v. Smith*, 1940, 308 U.S. 473, 477, 60 S.Ct. 355, 357, 84 L.Ed. 406, carrying out a broad basic policy of taxing 'net, not * * * gross, income * * *.' *McDonald v. Commissioner*,

> 1944, 323 U.S. 57, 66—67, 65 S.Ct. 96, 100, 89 L.Ed. 68. Equally well
> established is the rule that deductibility under s 23(a)(1)(A) is limited
> to expenses that are both ordinary and necessary to carrying on the taxpayer's
> business. *Deputy v. du Pont*, 1940, 308 U.S. 488, 497, 60 S.Ct. 363, 84
> L.Ed. 416. A finding of 'necessity' cannot be made, however, if allowance
> of the deduction would frustrate sharply defined national or state policies
> proscribing particular types of conduct, evidenced by some governmental
> declaration thereof. *Commissioner of Internal Revenue v. Heininger*, 1943,
> 320 U.S. 467, 473, 64 S.Ct. 249, 253, 88 L.Ed. 171; *see Lilly v.
> Commissioner*, 1952, 343 U.S. 90, 97, 72 S.Ct. 497, 501, 96 L.Ed. 769.

*Tank Truck Rentals, Inc. v. Comm'r*, 356 U.S. 30, 33-34 (1958).  However, *Tank Truck Rentals*, *Sterling Distributors*, and the other cases upon which HDR relies,[9] consider 26 U.S.C. § 162 rather than Section 280E.  Section 162 sets forth the general rule that ordinary and necessary business expenses are deductible, and then sets forth exceptions. One exception is for "other illegal payment under any law of the United States, or under any law of a State (but only if such State law is generally enforced)."  26 U.S.C. § 162(c)(2).  Section 280E contains no such exception for the lack of enforcement of the CSA by either state or federal authorities.  "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Dean v. United States*, 555 U.S. 568, 573 (2009).  Accordingly, it is irrelevant whether portions of the CSA are generally enforced by state or federal authorities.

---

[9] *Brown v. Comm'r*, 63 T.C. (CCH) 1866 (1992) (applying dead letter rule overturning IRS denial of deductions for illegal bribes and kickbacks); *see also Boucher v. Comm'r*, 77 T.C. 214 (1981) (declining to invoke dead letter rule under a "close question" of facts where official policy of non-enforcement was not shown).

Finally, the Tenth Circuit recently signaled that the CSA is not a "dead letter" law with regard to the prosecution of parties involved in the manufacture and distribution of medical marijuana. In *Feinburg v. Commissioner*, 808 F.3d 813, 816 (10th Cir. 2015), our Tenth Circuit stated (albeit in dicta):

> it's true, as the IRS stresses, that two consecutive Deputy Attorneys General have issued memoranda encouraging federal prosecutors to decline prosecutions of state-regulated marijuana dispensaries in most circumstances. But in our constitutional order it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime. And, frankly, it's not clear whether informal agency memoranda guiding the exercise of prosecutorial discretion by field prosecutors may lawfully go quite so far in displacing Congress's policy directives as these memoranda seek to do. There's always the possibility, too, that the next (or even the current) Deputy Attorney General could displace these memoranda at anytime[.]

*Id.* This Court agrees. The Court concludes that the Commissioner's brief, and the memoranda discussed therein, do not warrant a holding that the CSA is a "dead letter" law.

For the foregoing reasons, the Court concludes that Congress did not intend to allow businesses violating the CSA to deduct their business expenses. Section 280E.

**CONCLUSION**

**WHEREFORE**, United States' *Motion to Dismiss Petition to Quash* [Doc. 7] and *Motion to Dismiss Petition to Quash and Motion to Enforce Summons* [Doc. 18], are **GRANTED.** The Court will issue an order enforcing the summons issued to My Bank. If the documents sent to Ms. Turk by PNM are not responsive to the summons issued to PNM, within seven business days of the entry of this Order, the United States may submit a proposed order granting enforcement of summons to this Court, copied to HDR.

**SO ORDERED** this 31st day of March, 2017, in Albuquerque, New Mexico.

_____

M. CHRISTINA ARMIJO
Chief United States District Judge